HOBBIE, APPELLANT, *v.* CITY OF MEDINA, APPELLEE.

(No. 1421—Decided December 31, 1985.)

*John E. Codrea,* for appellant, John M. Hobbie.

*Roger R. Ingraham,* director of law, for appellee.

QUILLIN, J. This is an appeal from a judgment of the court of common pleas affirming an order of the civil service commission upholding the discharge of appellant police officer for insubordination, refusal to submit to a polygraph examination, and refusal to cooperate with an internal investigation. We affirm.

Lieutenant Shows of the Medina Police Department conducted an investigation into losses and thefts from the department. The investigation focused on appellant. Lt. Shows informed appellant that the chief of police was ordering appellant to submit to a polygraph examination. Appellant agreed to take the polygraph examination and met Lt. Shows at a polygraph-testing facility. Appellant then refused to sign the consent form and gave the examiner a letter stating the conditions under which he would take the polygraph examination. The examiner refused to administer the test unless appellant signed the consent form.

Appellant was suspended for thirty days without pay and later discharged. The civil service commission affirmed the dismissal, as did the court of common pleas.

### Assignments of Error

"1. The court of common pleas erred in affirming the appellant's discharge for alleged insubordination, refusal to submit to polygraph examination and cooperate with an internal investigation, such affirmance being contrary to law.

"2. The judgment of the court of common pleas is contrary to the manifest weight of the evidence."

The Fifth Amendment privilege against self-incrimination applies to state as well as federal proceedings. *Malloy* v. *Hogan* (1964), 378 U.S. 1; *Murphy* v. *Waterfront Comm.* (1964), 378 U.S. 52. Therefore, a person may not be discharged from public service solely because he invokes his privilege against self-incrimination. However, where a police officer is not required to waive his privilege against self-incrimination with respect to the use of his answers or the fruits thereof, the privilege does not bar the dismissal of a police officer who refuses to answer questions specifically, directly, and narrowly related to the performance of his official duties. *Gardner* v. *Broderick* (1968), 392 U.S. 273; *Uniformed Sanitation Men Assn., Inc.* v. *Commr. of Sanitation* (1968), 392 U.S. 280.

It has been held that an employee who is ordered to take a polygraph examination must be informed that the questions will relate specifically and narrowly to the performance of his official duties; that the answers cannot be used against him in any subsequent criminal prosecution; and that the penalty for refusing to answer is dismissal. *Seattle Police Officers' Guild* v. *Seattle* (en banc 1972), 80 Wash. 2d 307, 494 P. 2d 485; *Gandy* v. *State, ex rel. Division of Investigation & Narcotics* (1980), 96 Nev. 281, 607 P. 2d 581; *Eshelman* v. *Blubaum* (App. 1977), 114 Ariz. 376, 560 P. 2d 1283; *Roux* v. *New Orleans Police Depart.* (La. App. 1969), 223 So. 2d 905, certiorari denied (1969), 254 La. 815, 227 So. 2d 148, certiorari denied (1970), 397 U.S. 1008; *Dolan* v. *Kelly* (S. Ct., Spec. Term 1973), 76 Misc. 2d 151, 348 N.Y. Supp. 2d 478.

While the Supreme Court of Ohio

has not yet decided this issue, there is no federal constitutional prohibition which appellant may raise against testifying under the circumstances enunciated in *Gardner* v. *Broderick, supra,* and *Uniformed Sanitation Men Assn., Inc.* v. *Commr. of Sanitation, supra.* This court held in *Marsh* v. *Civil Service Comm.* (1977), 64 Ohio App. 2d 151, 157, 18 O.O.3d 112, 116, 411 N.E. 2d 803, 807:

" " * * * [A] public employer may discharge an employee for refusal to answer where the employer both asks specific questions relating to the employee's official duties and advises the employee of the consequences of his choice, *i.e.,* that failure to answer will result in dismissal but that answers he gives and fruits thereof cannot be used against him in criminal proceedings. * * *' " *Id.,* quoting *Confederation of Police* v. *Conlisk* (C.A. 7, 1973), 489 F. 2d 891, 894, certiorari denied (1974), 416 U.S. 956.

We find no persuasive reason why the result should be any different because a polygraph is involved. Policemen may not be required to waive their constitutional privilege against self-incrimination under threat of removal from office, and this protection against coerced statements prohibits the use of any statements so obtained against the policemen in a subsequent criminal prosecution. *Garrity* v. *New Jersey* (1967), 385 U.S. 493.

In Ohio, there is no statutory bar to the use of polygraph examinations by either public or private employers. This court has declined to recognize a state policy prohibiting involuntary polygraph testing in the absence of legislative or Supreme Court guidance. See *Aylward* v. *First Bank Corp.* (Sept. 12, 1984), Summit App. No. 11628, unreported.

Appellant refused to sign a consent form but gave the polygraph examiner a letter stating the conditions under which he would take the polygraph examination. These conditions included:

"" * * * [A]ll questions asked of me must be specifically and narrowly directed towards this particular incident. * * * I will not answer any questions other than those related to the incident * * *.

"" * * * I am not voluntarily taking this examination because I have been ordered to appear. In addition, I believe that my failure to appear would lead to disciplinary action and that should I 'fail' the examination, I will be immediately suspended or dismissed from the Police Department. Accordingly, I am being forced to take this examination against my will.

"" * * *

"I do not consent to the release of the examination results to anyone but myself and only when I am personally informed as to the results of the polygraph will I, at that time, consider the release of the examination results to other individuals. * * * I will not execute any document releasing any of the individuals connected with this matter from civil liability. * * *"

The condition that all questions relate specifically, narrowly, and directly to the performance of appellant's official duties parallels the requirement set out in *Gardner* v. *Broderick, supra.* Appellant was also aware that no criminal investigation was involved and that he would probably be dismissed if he refused to take the examination.

As noted by the trial judge, the critical issue is what effect appellant's refusal to release the polygraph results to anyone other than himself had on the order to take the examination. We agree with the trial judge that:

"" * * * [H]ere the employee was ordered to submit to a polygraph, was assured that the answers were for use in an internal investigation, not a criminal investigation, appeared for the examination, *then* refused to turn the results over to the employer who lawfully ordered the examination. This action

clearly frustrates the very intent of the police department's order and would seriously interfere with the internal investigation.''

Therefore, the appellant's dismissal is neither contrary to law, nor against the manifest weight of the evidence.

The Fifth District Court of Appeals reached the same result in a similar case, *State, ex rel. Neudecker,* v. *Newark* (Sept. 30, 1981), Licking App. No. CA 2756, unreported. In *Neudecker,* the court found that there was no deprivation of the appellant policeman's constitutional rights and upheld the dismissal for intentionally and willfully hindering the investigation. The basis of this decision included:

" '* * * [A]ttempting to hinder the Police Department's investigation into the above matter by handing the Bureau of Criminal Identification['s] polygraph examiner a statement written by you which stated, "I do not consent to the divulgence of this test" * * *.

" '* * * [A]ttempting to hinder the Newark Police Department's investigation into the above matter by handing the B.C.I.'s polygraph examiner a letter from an attorney in Columbus threatening to sue the Bureau of Criminal Identification if * * * [it] released the test results of the polygraph test which you finally took * * *.' "

Appellant's refusal to release the results of the polygraph examination to anyone effectively frustrates the order to submit to the polygraph examination. Therefore, there is substantial competent and credible evidence to support appellant's discharge for insubordination, refusal to submit to a polygraph examination, and refusal to cooperate with an internal investigation.

The judgment is affirmed.

*Judgment affirmed.*

GEORGE, P. J., and BAIRD, J., concur.