CHARLES LIVINGSTON & SONS, INC., APPELLEE, *v.* CONSTANCE ET AL., APPELLANTS.*

(No. 4181—Decided December 5, 1961.)

*Messrs. Harrington, Huxley & Smith*, for appellees.

*Mr. Mark McElroy*, attorney general, and *Mr. Daniel T. Lehigh*, for appellant Bureau of Unemployment Compensation.

DONAHUE, J. This appeal is from a reversal, by the Common Pleas Court, of a decision of the Unemployment Compensation Board of Review.

Under Section 4141.28 (N), Revised Code, such a reversal can be based only on a finding by the Common Pleas Court that the decision of the board of review is "unlawful, unreasonable, or against the manifest weight of the evidence."

The facts here are unquestioned. Charles A. Livingston & Sons, Inc., with its associated stores, found that it was suffering inventory shortages to an extent that the company's profit was being wiped out. Thefts by employees were suspected, and, after numerous efforts were made to reduce the shortages, Livingston finally insisted that all employees take a carefully regulated lie-detector test. Forty-four employees refused and as a result either quit or were fired.

---

*Motion to certify the record overruled (37441), June 20, 1962.

These employees thereupon applied for unemployment compensation. The board of review allowed the compensation.

The board found, in effect, that requiring the employees to take lie-detector tests and the refusal of some employees to do so and their subsequent separation by forced resignation or firing, were not firings for good cause under the Unemployment Compensation Act. It will be noted that no question of the company's right to fire, with or without any cause whatsoever, is involved here.

So far as the record shows, the company had a perfect right to fire any employee, without any cause. The sole question is whether such cause for firing existed, as defined by the Unemployment Compensation Act, as would bar an employee from such compensation.

The real question before the Court of Common Pleas was whether the board of review's decision was "unreasonable"— not whether the Common Pleas Court thought the requirement of a lie-detector test was unreasonable.

The board of review gave full consideration to the results of such a test, i. e., possible further investigation and possible criminal charges triggered by the test; almost certain firing, if the test indicated possible or probable guilt; consequent effect on reputation of the employee, etc.

And the board decided there was not just cause for firing an employee who refused to take his chances on a machine which had not been proved accurate enough for court use and from which the courts universally protect the worst and most hardened criminal.

Is that decision of the board of review "unlawful, unreasonable or against the manifest weight of the evidence"?

Our statutes on appeals from such decisions are so designed and worded as to leave undisturbed the board's decisions on close questions. Where the board might reasonably decide either way, the courts have no authority to upset the board's decision.

There was, in our opinion, just such a close question of fact as to just cause of the firings.

Therefore, in view of all the circumstances, we hold that that decision is not "unlawful, unreasonable or against the manifest weight of the evidence." The judgment of the Court

of Common Pleas must, therefore, be reversed, and the decision of the board of review reinstated.

*Judgment reversed.*

GRIFFITH, J., concurs.

BROWN, P. J., dissenting. This appeal involves the claims of 44 individuals for unemployment compensation benefits.

These claims were allowed by the Unemployment Compensation Board of Review in a decision which was based upon findings that certain employees of the appellee voluntarily quit their employment rather than take a polygraph test which was made a condition of their continued employment by the employer, and certain other employees were discharged by the employer for refusing to take the test. The board of review held that these employees were eligible for benefits under Section 4141.29, Revised Code, and did not fall within the exception of paragraph C, subsection 1 of that statute, as in effect prior to October 16, 1959.

The Common Pleas Court of Mahoning County on appeal under Section 4141.28, Revised Code, reversed the decision of the board of review, while adopting the findings of fact made by the board. The Common Pleas Court based its reversal on the fact that it found the decision of the board of review unlawful, unreasonable, or against the manifest weight of the evidence. This is the language of Section 4141.28, Revised Code, authorizing the appeal.

The trial court held that the sole question involved was whether the requirement of the polygraph or lie-detector test by the employer under all the circumstances present in this case was a reasonable condition of continued employment.

Under the facts of this case the Common Pleas Court held that the requirement was reasonable. The majority of this court disagrees with the judgment of the Common Pleas Court. I dissent.

The facts of the matter are:

The appellee company and its associates are Charles A. Livingston & Sons, Inc., Livingston Boardman Corporation, and Livingston Liberty Corporation. These companies carried on a retail sales operation, selling ladies and children's clothing

and accessories in the city of Youngstown, Ohio, and its immediate vicinity.

Prior to the events here involved there had developed at these related companies a very serious inventory shrinkage or shortage lasting for a period of several years, which sometime shortly prior to the events complained of had increased at a rapidly accelerating rate. Evidence introduced shows that a reasonable inventory shortage for a store of the kind here involved is six-tenths of one per cent of gross sales. The shortage in this instance had risen to 1.4% of sales as of January 31, 1959, and had jumped from a percentage of nine-tenths of one per cent of sales at the end of the previous year, January 31, 1958. Evidence shows that the average retail net profit is less than one and a half per cent of sales. This meant that the increase in the shortage was such that it was rapidly wiping out profits and threatening the life of the business. Numerous methods of controlling the shortage were utilized by the employer without effect. After investigation, the company determined to institute polygraph examinations as a condition of continued employment as the only accurate and fair way to stop the shortage. It was proposed that the tests be given by an independent agency specializing in this method of examination. The test was uniformly required of all employees. The questions asked were related to the business of the employer. Each employee, in advance, was instructed in the function of the polygraph machine. The exact questions which were to be asked were given to each employee in advance.

There is no doubt that an employer may impose reasonable conditions for continued employment. An employee may not renounce his employment because of a reasonable condition imposed by the employer and thereafter participate in the State Unemployment Compensation Fund.

Under the admitted facts of this case, inventory shortages threatened the continued existence of these enterprises and clearly justified the reasonable methods used to correct the situation.

The Supreme Court of Ohio in *Zanesville Rapid Transit, Inc.*, v. *Bailey*, 168 Ohio St., 351, notes:

" 'The imposition by the employer of changes in working

conditions or wages, even though they deprive the employees of some advantage they already possess, does not necessarily constitute a lockout. Changes in the terms of employment might still be such that under all the circumstances the employees would be expected in reason to accept them rather than quit work.' ''

In that case, the court held that if the condition of further employment was not an unreasonable one the employee is disqualified from eligibility for benefits granted under Section 4141.29, Revised Code, if such employee voluntarily quit.

It is interesting to note that the requirement that employees take a lie-detector test as a condition of employment was submitted to the National Labor Relations Board under an unfair labor practice charge by a union.

In case number F-816, 43 Labor Relations Reference Manual, 1377, December, 1958, the general counsel refused to issue a complaint upon the union's charge of unfair labor practice by the company's requirement that employees take a lie-detector test as a condition of employment. The general counsel ruled that ''in the absence of evidence of an unlawful motive on the part of the company a finding that the company violated the Labor Management Relations Act either by failing to consult the union before requiring such tests in connection with continuing thefts of its property or by discharging employees who refused to take the tests is not warranted.''

In that case the company was experiencing serious shortages, and it advised the employees that all of them must take the test. Two of them refused and they were fired. The union then filed charges alleging an unfair labor practice. As stated above the complaint was not issued and the general counsel held that ''there was no evidence that the company's actions in these respects were motivated by other than economic consideration.''

I feel that our holding should be that employees who refused to comply with uniformly applied and reasonable conditions of continued employment and who chose to quit rather than to comply or be discharged by reason of their noncompliance are ineligible for benefits under Section 4141.29 C (1), Revised Code, as in effect prior to October 16, 1959.

I opine that the Common Pleas Court did not err in refus-

ing to consider Section 4141.29 C (10), Revised Code, as in effect prior to October 16, 1959, and that that section had no relevant import to the facts of this case.

Under the undisputed facts of the case, the Common Pleas Court was correct in reversing the decision of the Unemployment Compensation Board of Review since the decision is unreasonable and contrary to law.